al. The next case, Hollybrook Cottonseed Processing v. American Guarantee and Liability Insurance Company. And you're first, Mr. Ward. Correct, Your Honor. Good morning, Your Honors. Your Honor, Joseph R. Ward, Jr. on behalf of Hollybrook Cottonseed Processing. This Court has had this case before. I'm sure you're all familiar with the underlying facts. This Court reversed the judgment of the District Court, sent this matter back for determination of attorney fees. We've gotten balled up again, and I want to make sure this Court is aware of some underlying facts which really underpin what's happened. This was an unusual case. We had two insurance companies. It's a retribution case, sort of a products liability type Louisiana retribution case. This Court determined that attorney fees, which are allowed under that statute, are damages. And the Court refused to find they were damages and said they're not damages under the definition of the policy. This Court said, oh, absolutely, they are. Go back and determine attorney fees. We had a settlement in this case before the first trial. It was called a gas case settlement under Louisiana law. Well, since we have direct action against insurance companies, you're actually entitled to settle with the insured and reserve your rights against the insurance company for any cause of action that the insured's liable for and that there's coverage for. It's a gas case settlement. I wasn't comfortable just saying, okay, Century Insurance Company, the primary carrier, we have a gas case settlement. We're going to reserve all our rights. We did belt and suspenders. We went to AGLIC and said, guys, we want to settle with Century. We want you to sign a stipulation that we reserve all our rights to pursue all damages against AGLIC. AGLIC was excess? They're the excess carrier. And this is critically important. They got into a dispute about how much the primary was. It was a $2 million policy, but damages occurred in two years. Century said, we only owe $2 million. AGLIC said, no, you all got $4 million. Judge Foote looked at a summary judgment or something before and she denied the summary judgment. Sort of implied, I kind of believe there's two policies here, $4 million. So AGLIC says, well, we don't like a gas case settlement unless you stipulate we get $4 million credit. I thought about it. I'm getting $2.9 in the settlement. Everybody agrees, $2.9. Century made the argument, Joe, we still think it's $2 million and we have liability issues. You know, let's negotiate. So we came to $2.9. We did a stipulation, which is document 397, tab number 8 in my excerpt. And in that stipulation, we reserved our rights and AGLIC said we will not be prejudiced to the insured caused us. That are covered under the policy. We stipulated to that. Fast forward, we go through a trial, not this counsel, their prior counsel pulled a fast one. The judge declares a mistrial after two weeks. We come back on damages only. The jury comes back at $6,070,000 plus another award for the cost of the machinery, which is not insured. So the judge separated that out. So they get credit for $4,000,000. So they only owe $2,000,000 in some interest. This court affirmed that. They wrote a check. In the meantime, we got into a dispute about how much interest is due on that $2,000,000. I thought it should be on all the damages. And so I said my attorney fee is going to be $834,000. I've already made $966,000 in that settlement with Century. We got $966,000. Judge, I'm going to get another $834,000 because that's what they're going to end up owing around three point something million. So I filed a motion. We agreed in our pretrial order it would be handled by motion, post trial motion. I filed my motion. They filed their opposition. In their opposition, they tell the judge, oh, they've already been paid attorney fees when they settled for the $2,900,000. I'm like, no, no, no, no, no. We have a stipulation. All damages over $4,000,000. Well, the judge, by the way, this is not Judge James, wonderful guy in Monroe. He had the case for a few months early on. It went to Judge Foote, who had the first trial. It went to Judge Don Walters for the second trial.  And Judge James could put back on his desk, after five or six years, 700 docket entries. And he looks at it, and I've said, Judge, I'm entitled to about $1.8 something. The $966,000 plus $834,000. He writes a beautiful opinion about, boy, you're a great lawyer. You've done great work. Look at all the work you did. 33% is reasonable. In fact, I would have gone with 40%. But, Lord, you're not entitled to $834,000. You're only entitled to $756,000 because I did not give you all the interest you wanted. And he was right. No, no issue on the reasonableness of the damages, none at all. No, that's right. So he said, I'm going to deny your motion for $834,000. My motion was for $1.8. It should have been knocked down to $1.7. Because after I filed the motion, he ruled I'm not entitled to judicial interest on the lost wages because he couldn't tell if they were past or future. And I said, that's not my fault. That's their fault. He said, no, no, no. It's your fault. I'm only going to give you interest from the date of judgment. I said, fine. OK, Judge. So my attorney fees on this part, and they immediately paid it. They paid this $2.2 million. My fee, it turned out, he awarded $750,000. He said, I'm going to deny your motion for $834,000, but grant it for $757,000. I asked for a re-hearing. I said, Judge, you missed it. In his opinion, he said, yeah, yeah, you've already been paid $966,000. My client paid me $966,000. My client hadn't been reimbursed for those damages. This court said those are damages. He said, you've already been paid for that, Mr. Ward. Well, if attorney, what do you mean? Let me, I'm missing something. You did not get the $966,000. I got paid $966,000. Right. We settled in 2011. My client had damages. But damages, but that's just because attorney's fees included, I mean, damages included attorney's fees. Attorney's fees. We settled for two. That doesn't mean it's not attorney's fees. No, no, it was paid to me as attorney fees. Yes, OK. We settled for $2.9, and in that settlement, there's no discussion about what's property damage, what's loss of income, what's attorney fees. So if we affirm what the district court did here, you would be getting $1.7 million compensation. That's right. At the end of the day, Your Honor, you're right. My client has paid me a total of $5 million, has recovered a total of $5,196,788. So my fee has been $1,700,000. They've only been reimbursed for the part, the $757,000 that was awarded against them. Well, that's only if you elide the concepts of, I think elide is the right word, or mix up the concepts of damages and attorney's fees. That's right, and this court was very clear when this court wrote the opinion that attorney fees are damages. The court basically, and I can— $750,000, did you ever have any associates working on the case? I have my partner work on it. We have law clerks work on it. We submitted our time slips, Your Honor, and he kind of looked at that. And we granted a new trial on the issue of attorney fees and said, okay, yeah, you're right, Mr. Ward, you did get $966,000. But looking at everything, I'm going to stick with the $735,000. He doesn't give any reason why. He says, well, I could have gone by hours. I went with attorney fees, so it's a balancing. He discusses nothing about why. My client's basically getting 14% of what they paid in attorney fees. It's basically less than half of what they paid. He said 33% is fine. I would even go to 40, but what he awarded— But they got their damages back, right? Except for attorney fees. Fine. That's all I need. Well, let me quote what this court said about whether those are damages or attorney fees. We conclude from the foregoing that the attorney fees in this retribution actually are properly included within Hollybrook's damages. And the district court erred by refusing to characterize them as included within the policy insuring agreement. You can't separate attorney fees from loss of income or loss— As I understand it, you're entitled to reasonable attorney fees. He made a decision on reasonableness, and the question is whether he abused his discretion. And so in awarding you what amounts to almost a third of what the total recovery was, or also a rate of $250 an hour. So did he abuse his discretion on the amounts, or did he make a legal error? I think he made—his analysis was based on both. He mixed up the facts. And by the way, me getting paid is not the issue. It's what my client's paid. And I know there are cases that say we don't care what your client pays. Is the check going to be written to? It would be to my client. I've already been paid. My client's already paid me. The judgment has been paid. The settlement was paid. My client paid me back in 2011. I'm not here as the party seeking fees. My client's here trying to figure out why they're not being reimbursed for this item of damage. It would be like, Your Honor, the judge saying, yeah, the jury awarded $6 million. Say $2 million of that is for lost profit. I'm going to forget about the lost profit. I'm just going to award you your property damage. That's what he's done. There were three elements of damage—four elements of damages. One of them we threw on the side. The cost of their machine is not included in the insurance, so we put that on the side. We have lost profits, past and future, and then we have property damage. And then we have attorney fees. The jury awarded all this. We agreed the judge would handle the attorney fees, and he has not awarded attorney fees for what they paid. He gives no reason why. It is an abuse of discretion. But if you read his first opinion, he makes a mistake. He's just mistaken. He thinks, I'm there to get my fees. You've already collected $966. You've already collected your $966 on the $2.9. We're here today just to talk about whether it's $835 or $757. That wasn't the issue. You have probably told him that the client had already paid you $1.7. Well, they had. It had been incurred. The client had been damaged. I understand that, but a reasonable judge could get confused. Oh, I'm not— You were almost confusing me here, but— And perhaps that's what happened. I think the confusing thing was when counsel said, hey, that's already been done. They settled that. But, you know, even if attorney fees is part of damages, they still have to be reasonable, don't they? That's right. And he went through an analysis and found that 33% is very reasonable. And he found that 40% would have been reasonable. But then he jumped and he said, so your motion is denied to the extent it seeks $834. I wasn't seeking $834. I was seeking the $966 plus $834. He said, I'm going to grant it to $757 because that's one-third of what he actually, at the end of the day— I hope you had a chart up in front of him because all these numbers are getting a little, you know— I didn't. In fact, I'll never agree again just to do it by motion. I think we should have had a hearing in front of the judge where we could have made sure everybody understood. The problem was, Judge, it was split up into two cases. There's an ironclad stipulation. They only get a $4 million credit. They got their credit. Now they're getting credit for another $966,000 on top of that. They convinced this judge, or maybe I confused the judge, the $966 has already been paid. If my client had written me a check for the whole $1.7, they could have argued, oh, they've already paid the $1.7. They don't have any attorney fee issue. That's just wrong. It's not me trying to get the fees. It's the client trying to be reimbursed for the fees. You won't find, in his opinion, any analysis, any analysis of why that is reasonable. He just—basically, I think when he got it, he had a, oh, goodness moment. Oh, I didn't consider that. And he says, yeah, I understand now. All right, I see it, $966. But I think $757,000 is fine. That was the end of it. This court has a long history of looking at fees saying, hey, it's abuse of discretion, and really we don't want to get into these weeds and nuts and bolts. We are not accountants. We're not there with our green hat on, punching these numbers. The judge is in a position, since he has the whole case, to know what happened. That's not true in this case. It's like everything that could be wrong is wrong. I had judged James for a few motions back in 2009. I then had judged Foote for a couple of years, for many years. They must not have liked you. They kept removing themselves from the case, didn't they? I don't know what it is. I, quite frankly, don't know Judge Walters handled the second trial. He backed out, too. And then, for no reason, he said, I'm done. Maybe it is me, Judge, and I don't know. But at the end of the day, my client knows everything there is to know about Redhibition now. And they were told by this court that your attorney fees are part of your damages. They don't understand, if that's true, why did we only get half back? And I don't have an answer for them. It's not in Judge James' opinion. I think that is the definition of arbitrary and capricious. I just think it sounds good to me. No analysis. Thank you, Your Honor. Okay. Thank you, Mr. Ward. Okay, Mr. Kennedy. I plead the court, Robert Kennedy. I'm with the law firm of Cook, Yancey, King & Galloway in Shreveport, Louisiana. I represent American Guarantee and Liability Insurance Company. I'll refer to that entity as AGLIC at some point. As counsel noted, this is our second trip before this court, and I remember seeing Judge Rivley here the last time that we were here. Judge James conducted a thorough analysis of the underlying facts. No, he wasn't involved in the case from day one. Well, he was involved from day one, then got out. The case was sent to Judge Foote and then sent to Judge Walter for a little while. But in connection with these motions, there were other motions pending about interest and penalties, and there was a host of other issues and motions that were filed. So when you read his record, and I'll go through that in a minute, it's clear he conducted a thorough analysis of this case. Including the fact that Hollybook provided limited billing records, which included work on other claims and work for other defendants. Judge James eventually concluded the amount of $757,940 in attorney's fees was proper, and he balanced all those interests, and we'll talk about that. How do you square his initial finding that a one-third fee in a case like this, particularly with the work that was done, was reasonable, and then only award about half the fee? Well, Judge James never ruled that one-third was reasonable in the abstract. He was always ruling that in the context of a $2,296,000 recovery. He never said one-third was reasonable in the abstract. I don't believe that this was a mistake on the part of Judge James. The first opinion may have been somewhat inartfully written, but I don't believe it was a mistake. And I don't believe he ever says a one-third recovery in the abstract is reasonable. In fact, if he had done that, I think that would be arbitrary and capricious. There's no case law that says one-third paying someone the attorney's fees pursuant to the contingency fee contract in the abstract is reasonable. Well, we can say in this case it's reasonable. If you can pin it in on this case, yes, and under particular facts, if you can do that, then yes. But that wasn't the fact, and that wasn't the case. That wasn't what Judge James found. His ruling was always in the context of this $2 million. And so what I think he did, and I think it's pretty clear what he did. Let me just jump to that. That was the way I read it. Okay. But I guess you have to talk about it too. Well, let's see. What did Judge James do? The first thing he did was he followed the legal rule that courts are not bound by the terms of contingency fee contract when awarding attorney's fees. He followed the rule that, yes, an award of attorney's fees pursuant to the contingency contract could be appropriate, but only where the fee requested is reasonable. The question is, is the fee requested reasonable? Judge James considered the contingency fee contract. He considered the fact that Holly Brook was seeking $1.8 million or $1.7 million in attorney's fees. He considered the experience of counsel. He considered the billing records that showed over 3,000 hours of work. Now, in connection with that, we submitted an analysis of that work showing that some of the work was on other claims, some of the work was for other defendants, and even if you paid Mr. Ward $250 an hour for every hour, even the paralegal work, for travel time, for everything, you know, that's about $750. We thought his appropriate attorney fee should be about $600,000 based on what we could tell from the records, but the records were not very detailed, and you couldn't identify them. There was a lot of argument and a lot of work done on coverage. There was no distinction between those things in the bills. Judge James considered the number of depositions. He considered the extent of discovery. He considered the fact that there were two trials.  I mean, he looked at all that. But, again, he also considered that Holly Brook was only entitled to recover work on the redhibition claim. He considered the fact that we were contesting the amount of these fees. And, again, even if, you know, as we pointed out in the trial court brief, even if you gave Mr. Ward's firm $300 an hour for every hour he had written down, even a paralegal time, everything, that was only $900,000. There's no way to get to $1.7 or $1.8 million in a reasonable analysis. Again, there's courts that have looked at a third and looked at the billing, and when it comes out about the same, they're okay with that. But there's no court that I could find in which the court gave a third when that was ending up being two or three times what the actual hours showed. I've seen most cases, though, given enhancement for a lawyer who takes a case on a contingency basis. And if you concede that I think, and AGLIC thinks, that Mr. Ward should have gotten about $600,000, that's what Judge James was doing, and that's what he says in here. He says, in his opinion, the court would have acted within its discretion to perform a line-by-line analysis of the limited billing records provided and awarded fees only for those hours accounted for which were not duplicative and which were properly attributable to the claims against Carver. However, the court had concerns that such an award would have failed to adequately account for other factors favoring a greater award for Hollybrook. So that's what he did. I mean, he looked at all this. He looked at the number of hours. He looked at our arguments, and he awarded $757,000, which was a third of what the recovery was from AGLIC. But when you look at— Your only burden is to prove it's not an abuse of discretion, right? That's true, Your Honor. Absolutely. And didn't the Louisiana— No. I mean, the Louisiana Supreme Court does not insist that contingency fees be followed in these cases, right? No, and in fact, in Rivet, they didn't follow it. So you're from Louisiana and you call it Rivet? It's not Rivet? Maybe it's Rivet. I'm from north Louisiana. North Louisiana. In Rivet, they didn't follow that, as the court is well aware. I mean, the trial court originally awarded a one-third contingency fee, which was pretty close to a million dollars. It got remanded on appeal with instructions to find out what the reasonable attorney's fee was. The court did that and awarded $237,000, roughly. The plaintiff filed a motion for a new trial, and he makes the same argument that Mr. Ward is making today, which is, look, if you only award us $237,000, my client's coming up short because he's still having to pay me about $900,000 or a million. And the trial court said, oh, yeah, yeah, you're right. So on the new trial, he then bumps the award back up to the $900,000 or a million, goes up to the Supreme Court, and the Supreme Court says, no, that's not what we told you to do. You've got to find the reasonable attorney's fees. He's only entitled to recover reasonable attorney's fees. He's not entitled to recover what he paid his lawyer, only the reasonable attorney's fees, and they bumped it back down to $237,000. In Bailey v. Delacruz, the plaintiff wanted a 40% contingency fee, which would have been $286,000. And the court said, yeah, but when I'm looking at what you did, I award you $25,000. The court of appeals affirmed that. In Shadwar, I think I said that right, v. Port, the plaintiff requested one-third of $69,500 award. The court awarded $15,000. The court of appeals said that's not abuse of discretion. So there's no cases. The only case, I mean, the counsel cites the Lenowski case in which the plaintiff made that argument, but, again, the court of appeal didn't adopt that argument. The court of appeal, I'm not aware of any court of appeal argument case where they said, we're going to give you one-third as attorney's fees irrespective of what the work you did. They've always looked at what was the work you did. Let's start like a lodestar with the hours you've worked, a reasonable attorney's fee, and then start from that premise, which is what we did in our brief. You get to somewhere in the range of $600,000, $700,000, no matter what you do. We can bump it up a little bit. We can bump it down a little bit. Judge Stagg, in the Cates v. Sears case, you saw he bumped it way down in this court of firm. And so the issue here is, starting from that premise, Judge James' opinion was absolutely correct. And he clarifies that in his second opinion. And he says, he says, the court balanced the complexity of the case, the risk undertaken by counsel, and the significant length of the litigation. He also balanced that against the properly raised objections from Hollybrook about the time spent. Again, he says, He goes on to say, So again, as Judge Jones said, The plaintiff's burden is to prove that Judge James abused his discretion. When you look at the record as a whole, when you look at 3,000 hours in work, even when you look at that, you can't get to $1.8 million, $1.7 million. You get to $600,000 or $700,000. You can bump it up a little bit. That's what Judge James did. But I don't think you can conclude from any of this that what Judge James did was an abuse of discretion. This court, and I think, in fact, it was Judge Jones, in the Henry High Sulfur Content Gasoline Products Liability litigation, said that trial court findings are not required to be so excruciatingly explicit in this area of minutia that decisions of fees awards consume more paper than did the cases from which they arose. In Fox v. Vice, the Supreme Court said, I mean, I think that's what Judge James did. He looked at the hours. He obviously didn't go line by line. He said he didn't go line by line, but he looked at the hours. He looked at the big picture. He made an award. It is consistent and in the range of an appropriate hourly fee based on the number of hours spent. And again, I just don't see how this court, we could have appealed this ruling as well. We looked at it and said, look, I don't like it. I think the proper award was $600,000, but I can't make the argument Judge James abused his discretion. I think it goes the other way as well. I don't see how you can conclude, even if this court were to conclude that 1.7 or 1.8 might be reasonable, I don't see how you conclude 757 is not reasonable under these facts. And in fact, I would suggest you can't find that 1.7 or 1.8 is reasonable under these facts. There's just not enough time spent on this case. Any other questions? I think that hits the gun. Thank you, Mr. Kennedy. Thank you, Your Honor. Okay, Mr. Ward. Thank you, Your Honor. Briefly, in rebuttal, Judge James did not consider the hours. Judge James, if you look at his original opinion, it's page 25648 in the record, document 689. He mistakenly says Holybrook seeks an additional $834,000, which is 33% of $2.5 million. That's when we thought they were going to end up paying $2.5. They ended up paying $2.2. He says you're wrong, Mr. Ward, you're wrong. It's not $834,000, it's $757,000. I'm going to award $757,000. He completely forgot. Are you talking about a transcript of a hearing? No. What are you quoting from? I'm talking about his reasons. I understand. In the new trial reasons. In the original. In the new trial. Right. In the original, he says, in addition to the $966,000 already paid in attorney fees, Holybrook now seeks an additional $834,000. That is not what we were seeking. We were seeking the $966,000 plus the attorney fees on this settlement. Let me just tell you, I mean, I'm looking, I mean, there were parts of the ruling that were slightly confusing, but I think the conclusion is beyond dispute. Judge, his number, $757,000. Right. He got that number by applying 33% against what the defendants paid. $2.2 million. $2.2 million. He didn't do an analysis of my time slips. And, by the way, contrary to what Mr. Richards says, my time slips did not include stuff on other matters, and it wasn't complete time slips. I made clear the judge understood that. I didn't keep time slips very well. This was not an insurance defense case for me. This was a contingency fee case. My secretary, after 37 years, keeps time. Otherwise, I wouldn't have had anything. She does keep time. It was over 3,000 hours, but we pointed out to the judge there were a lot of things we did, you can see from the record, that are not even in this. But to say, well, some of that includes working against other defendants, this defendant took the position that the other defendants, the other product manufacturers who made downstream equipment, caused the problem. So I was in the position of not only prosecuting their machine, the gateway equipment to this plant, I was also having to bring in experts and all to defend the other defendants at the end of the day. So if I had put their time in, which I didn't, it would have been reasonable too. But at the end of the day, it is an abuse of discretion for a judge simply to take out his calculator and say, okay, I know you've got 966 already paid. Let's look at the second payment times .33. It's 957. That's what you get. Wait a minute, Judge, you made a mistake. Yeah, but looking at everything, I think that's fair. Judge, how can that? That is so arbitrary. But you did get paid. I have been paid 100%. $1.7 million. $1.7 million and some change. My client, the plaintiff in this case. I know that's your argument, but I mean just which is about one-third of the $5 million, $6 million. That's right, exactly one-third of the $5 million they paid. But, Judge, you're falling into the same trap that Judge James did. It's not whether I got paid or didn't get paid. It's what damages were occasioned by their machinery. And at the end of the day, is the fee reasonable? He said a third is very reasonable. I would have gone 40%. In fact, my fee initially was 40%. But after a little settlement or something where they agreed to pay costs, we said, look, we'll do it for a third. He would have gone 40%. But at the end of the day, it's arbitrary, the way he arrived at the fee. Thank you, Your Honor. Thank you, gentlemen. We have your case.